[Cite as *State v. Schentur*, 2020-Ohio-1603.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 108448 |
| v. | : | |
| MARY SCHENTUR, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 23, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-628960-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ronni Ducoff, Assistant Prosecuting Attorney, *for appellee.*

Patituce & Associates, L.L.C., Joseph C. Patituce, and Megan M. Patituce, *for appellant.*

LARRY A. JONES, SR., J.:

{¶ 1} Defendant-appellant, Mary Schentur ("Schentur"), appeals her conviction for unlawful sexual conduct with a minor. For the reasons that follow, we affirm.

{¶ 2} This matter concerns sexual conduct between then 20-year old Schentur and a 15-year old freshman basketball player at a local high school where she had been the girl's coach. As a result, Schentur was indicted by information with four counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A), felonies of the fourth degree. The charging document listed the date of the offenses as between July 4, 2017 and October 3, 2017.

{¶ 3} The matter proceeded to a jury trial at which the following pertinent evidence was presented; throughout the proceedings Schentur and the young victim's age, and what knowledge Schentur had of the victim's age, were at issue.

{¶ 4} Schentur was hired as an assistant coach for the Independence High School girls' basketball team for the 2016-2017 academic school year. "H.D." was an incoming freshman on the team who was selected to play at the varsity level. H.D. was 15 years old. That fall, Schentur became friends with H.D. and her older sister, who also played on the team. Schentur would give H.D. rides to the games and communicate with her via text and Snapchat. They would also go to the Metroparks and out to get food. They often took "silly" pictures together, but Schentur asked H.D. not to "post" the pictures on social media. The friendship progressed to Schentur spending the night at H.D.'s house, often in H.D.'s bed. H.D. would also have parties at her house, where alcohol was consumed and Schentur was present.

{¶ 5} After the basketball season ended, the relationship between H.D. and Schentur did not. Schentur began to express "romantic" feelings for H.D.

through text and Snapchat. Schentur continued to spend the night at H.D.'s house. H.D. was also allowed to spend the night at either Schentur's house or at the house of Schentur's aunt.

{¶ 6} H.D.'s friends and family questioned H.D. about her relationship with Schentur and noted that she was forfeiting time with her other friends to spend time with Schentur. One of her friends asked her if she was having a relationship with Schentur, but H.D. denied that anything inappropriate was happening.

{¶ 7} The first incident occurred the night of 4th of July 2017, the summer before H.D. turned 16 years old. Schentur was 20 years old at the time. The incident occurred in H.D.'s bedroom. The second incident happened the same summer at Schentur's house. Another incident occurred at the home of Schentur's aunt. At trial, H.D. described the sexual conduct, which included digital penetration. H.D. and Schentur talked about keeping their relationship a secret; H.D. testified that they wanted to keep it secret due to the homosexual nature of the relationship.

{¶ 8} Schentur did not coach basketball for the 2017-2018 academic year because she was playing college basketball. In late 2017, Schentur told H.D. they were breaking up because she was dating someone else.

{¶ 9} H.D. started seeing a counselor about an unrelated family issue. At one of the counseling sessions, H.D. disclosed that she had had a sexual relationship with Schentur. The counselor, who testified at trial, advised H.D. that

she was mandated to inform Cuyahoga County Division of Children and Family Services ("CCDCFS"). The counselor advised H.D. to tell her father due to the counselor's duty to disclose to CCDCFS.

{¶ 10} According to H.D.'s father, he asked his daughter what was wrong on their way home from her last counseling session. H.D. told her father about Schentur. The father recalled that H.D. was angry that her counselor was going to report Schentur. His daughter refused to see the counselor again or to see another counselor.

{¶ 11} The head basketball coach testified that H.D. was one of two freshman on the varsity basketball team. According to the coach, he had told Schentur when he hired her that he had two girls that "were coming from the middle school" that he felt would "move to varsity" as freshman. The coach further indicated that "it's common knowledge you know what grade level your players are at."

{¶ 12} The assistant principal of the high school testified that most, if not all, freshman at Independence High School are 14 or 15 years old. The assistant principal was aware that Schentur was hired as an assistant basketball coach for the 2016-2017 academic year. One of the requirements for hire is that the employee have a "pupil activity permit."

{¶ 13} The state entered into evidence Schentur's pupil activity permit, which showed effective dates of July 1, 2015 – June 30, 2018. The assistant principal testified that the Ohio Department of Education has bylaws through the

Ohio High School Athletic Association, which include that "educators including coaches must have professional behavior that includes not being in violation of any state or national laws" and that coaches or educators must maintain a professional relationship with students, "which does not include sexual relationships or a relationship that would be deemed inappropriate." According to the assistant principal, the rules are not limited to current coaches, but "it's for anybody who's licensed under the Ohio Department of Education."

{¶ 14} Detective Jamie Bonnette ("Detective Bonnette") from the Cuyahoga County Sheriff's Department testified that he investigated the case. As part of the investigation, he learned that Schentur's birthday was May 17, 1997, making her at least four years older than H.D. at the time of the offenses. He secured a warrant for H.D.'s phone and analyzed communications between the child and Schentur.

{¶ 15} Karri Eckert ("Eckert"), a certified Law Enforcement Automatic Data System ("LEADS") operator for the Cuyahoga County Sheriff's Department, and Barry Solomon ("Solomon"), an investigator for the Ohio Department of Public Safety Bureau of Motor Vehicles, verified documents showing Schentur's birthdate. Further facts regarding their testimonies will be discussed under the appropriate assignments of error.

{¶ 16} The jury convicted Schentur of all four counts. The court sentenced her to 30 days in jail, one year of home detention, and classified her as a Tier II sex offender. The trial court stayed her jail sentence pending appeal.

## Assignments of Error

I. The trial court abused its discretion by permitting the state to reopen its case to present new evidence and witnesses[,] which resulted in substantial prejudice to the defense.

II. The state failed to present sufficient evidence to prove each and every element of R.C. 2907.04(A) beyond a reasonable doubt.

III. The trial court erred in allowing impermissible hearsay testimony from social worker Roser.

IV. The state committed prosecutorial misconduct by repeatedly questioning regarding convictions in records it attempted to tie to appellant and displaying those records to the jury.

V. The trial court erred in providing faulty instructions to the jury.

VI. The verdict forms signed by the jury were insufficient to convict appellant of felonies of the fourth degree.

## First Assignment of Error – Trial Procedure

{¶ 17} In the first assignment of error, Schentur contends that the trial court erred when it allowed the state to reopen its case to allow additional witness testimony and exhibits into evidence. Schentur argues that the trial court abused its discretion when it allowed the state to reopen its case so that the state could present evidence regarding a necessary element of the offense; to wit: Schentur's date of birth, to establish that Schentur was four or more years older than H.D. at the time of the offenses.

{¶ 18} The decision to allow the state to reopen its case for the presentation of further evidence lies within the sound discretion of the trial court, and this court will not reverse that decision absent an abuse of discretion. *State v. Roberson*, 8th

Dist. Cuyahoga No. 88215, 2007-Ohio-1981, ¶ 23, citing *Columbus v. Grant*, 1 Ohio App.3d 96, 439 N.E.2d 907 (10th Dist.1981). An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 19} In *Roberson*, the defendant was charged with theft of televisions from a Target store. After the defendant had moved for an acquittal pursuant to Crim.R. 29, the state asked to recall a witness to the stand to establish the value of televisions in order to prove that the value of the items stolen was over $500. The trial court allowed the state to reopen its case over defense objection. This court found that the trial court did not abuse its discretion because the state had the evidence in its possession prior to the presentation of any witness testimony. This court reasoned:

> This is not a case where the State was permitted to reopen its case after further opportunity to obtain the necessary evidence. Rather, it was a case of mere oversight by the State which had already obtained the necessary evidence through its prior investigation of the incident and preparation for trial. Moreover, there is no claim of surprise or prejudice on the part of defendant due to the nature or content of this additional testimony.

(Citations omitted). *Id.* at ¶ 29. This court concluded that the trial court "appropriately enabled the trier of fact to hear all available relevant evidence in the interest of justice." *Id.* at ¶ 30.

{¶ 20} In this case, Schentur was charged with four counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04, which states that,

(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

{¶ 21} In order to establish Schentur's age, the state, over defense objection, questioned Detective Bonnette, who testified that Schentur's birthday was May 17, 1997. After the state rested its case, the court determined that it had erroneously allowed the state to question the detective about Schentur's date of birth. After reversing its previous ruling, the court allowed the state to reopen its case and call two additional witnesses to establish Schentur's date of birth.

{¶ 22} Schentur claims that the trial court abused its discretion to her prejudice because "the defense strategy had been based on the state's failure to present the relevant evidence * * * the state did not believe it had to prove Appellant's age." We find this contention to be without merit. As mentioned, Schentur's age was at issue throughout the trial. When age is an essential element of an offense, it must be proved beyond a reasonable doubt. *State v. Price*, 80 Ohio App.3d 35, 43, 608 N.E.2d 818 (3d Dist.1992). Age may be proved by circumstantial evidence, but the jury's observations of the defendant alone are not sufficient. *Id.* Schentur provides no evidence that the state did not think it had to prove Schentur's age, an element of the offense, and sought to reopen its case because the state belatedly remembered it needed to prove her age.

{¶ 23} Contrary to Schentur's assertions, the record shows that the state first sought to introduce Schentur's age through the testimony of William Roser

("Roser"), the CCDCFS social worker.  When defense counsel objected, the state told the court at sidebar that it would instead introduce Schentur's age through Detective Bonnette's testimony.  The state then did so and relied on the trial court's ruling that allowed Detective Bonnette's testimony providing Schentur's date of birth.  But for the court's decision to reverse its own evidentiary ruling, the state would not have asked to reopen its case.

{¶ 24} Similar to *Roberson*, 8th Dist. Cuyahoga No. 88215, 2007-Ohio-1981, the evidence was in the state's possession prior to trial.  There was no claim of surprise or prejudice on Schentur's part due to the nature or content of the evidence.  We find no abuse of discretion in the trial court's decision to allow the state to reopen its case.  The first assignment of error is overruled.

## Second Assignment of Error – Sufficient Evidence to Sustain Convictions

{¶ 25} In the second assignment of error, Schentur contends that there was insufficient evidence to sustain her convictions for unlawful sexual conduct with a minor.  Specifically, Schentur argues that Eckert and Solomon's testimonies and accompanying exhibits were insufficient to establish Schentur's age.

{¶ 26} Whether a conviction is supported by sufficient evidence is a question of law, which this court reviews de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury."  *Id.*  Our standard of review when addressing the sufficiency

of the evidence is whether, after viewing the evidence presented in the light most favorable to the state, any rational trier of fact could have found all the essential elements of the crime charged beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 27} Schentur's only contention under this assignment of error is that the state failed to prove the element of her age. As mentioned, the state introduced the testimony of two witnesses, Eckert, a certified LEADS operator for the Cuyahoga County Sheriff's Department, and Solomon, an investigator for the Ohio Department of Public Safety Bureau of Motor Vehicles, to establish the defendant's age.

{¶ 28} Schentur claims that neither Eckert nor Solomon established that the records were Schentur's records because the documents were not self-authenticating and there was no testimony as to the accuracy of the record or the database from which the records were pulled. We disagree.

{¶ 29} This court has consistently held that a LEADS report is admissible when properly authenticated, pursuant to Evid.R. 803(8) and 901. *See Cleveland Metro. Park Dist. v. Schillinger*, 8th Dist. Cuyahoga No. 71512, 1997 Ohio App. LEXIS 3998 (Sept. 4, 1997); *State v. Cooper*, 8th Dist. Cuyahoga No. 43765, 1982 Ohio App. LEXIS 11330 (Mar. 18, 1982).

{¶ 30} Evid.R. 803(8) sets forth the following as exceptions to the rule against hearsay:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.

{¶ 31} Evid.R. 901 requires that prior to admitting evidence sufficient to support a finding that the matter in question is what its proponent claims, the proponent must authenticate or identify the evidence. Two examples of authentication or identification that conform to the requirements of the rule include (1) testimony of a witness with knowledge that a matter is what it is claimed to be, and (2) evidence that a writing authorized by law filed in a public office is from such office where items of that nature are kept. Evid.R. 901(B)(1) and (7).

{¶ 32} Eckert authenticated the LEADS printout through her testimony. Eckert testified about her employment history, certification, and training on the LEADS system, how the system worked, and what procedures the agency is required to follow. Eckert identified the LEADS printout as a record her office keeps in the normal course of business within the sheriff's department. We find it was properly admitted into evidence.

{¶ 33} This court has also held that Ohio Bureau of Motor Vehicles records constitute public records under Evid.R. 803(8). *See State v. Freeman*, 8th Dist. Cuyahoga No. 91842, 2009-Ohio-5218. Schentur claims that the BMV printout

was not self-authenticating because the seal on it was not an original seal — the driving records contained a photocopy of the seal and not the true seal itself. Schentur relies on *State v. McCallum*, 9th Dist. Medina No. 08CA0037-M, 2009-Ohio-1424, for the assertion that a photocopy of a seal does not create a self-authenticating document. *McCallum* is easily distinguishable.

{¶ 34} In *McCallum*, the defendant's driving records consisted of a copy of a driving record and a cover sheet. The cover sheet was signed by the registrar and custodian of files and records for the BMV and marked "Driver Record Certification." The registrar indicated that "the attached documents are true and accurate copies of the records in [his] custody." *Id.* at 14. The records, however, were not notarized and did not contain an official seal. The registrar did not testify at trial; instead the records were introduced through the testimony of a police officer. The appellate court found that the records were not self-authenticating because they lacked a seal, notarization, or affidavit attesting to their authenticity. *Id.* at 16.

{¶ 35} Unlike *McCallum*, the BMV records in this case contained a seal attesting to the accuracy of the report. Although the seal was a photocopy of the actual seal, the BMV records in this case were introduced by the BMV representative who prepared the records. We find that these records were properly authenticated and admitted into evidence.

{¶ 36} Moreover, even if the records of Schentur's actual date of birth were inadmissible and Eckert and Solomon's testimonies were lacking, there was

sufficient circumstantial evidence to show that Schentur was 18 years or older at the time she committed unlawful sexual conduct with a minor. The head basketball coach testified that he hired Schentur as an assistant coach and that she did not return the next academic year because she was playing full time for college. H.D. testified that Schentur did not return for H.D.'s sophomore year because she was playing basketball at college. H.D.'s counselor testified that H.D. disclosed to her she had been in a "relationship" with an "adult female coach from her high school that was in college" or "was college age."

{¶ 37} In light of the above, we find sufficient evidence that Schentur was "18 years or older" at the time she committed unlawful sexual conduct with a minor.

{¶ 38} Eckert and Solomon provided admissible documentation that Schentur's birthdate is May 7, 1997, making her 20 years old at the time of the offenses. Schentur makes no other argument with regard to sufficiency of the evidence. We conclude there was sufficient evidence to support her convictions.

{¶ 39} The second assignment of error is overruled.

### Third Assignment of Error – Social Worker Testimony

{¶ 40} In the third assignment of error, Schentur claims that the trial court erred when it allowed into evidence impermissible hearsay testimony from CCDCFS social worker Roser.

{¶ 41} "'It is well established that, pursuant to Evid.R. 104, the introduction of evidence at trial falls within the sound discretion of the trial court.'"

*State v. Jeffries*, 8th Dist. Cuyahoga No. 106889, 2018-Ohio-5039, ¶ 10, quoting *Caruso v. Leneghan*, 8th Dist. Cuyahoga No. 99582, 2014-Ohio-1824, ¶ 32, quoting *State v. Heinish*, 50 Ohio St.3d 231, 553 N.E.2d 1026 (1990).  Therefore, an appellate court that reviews the trial court's decision with respect to the admission or exclusion of evidence must limit its review to a determination of whether the trial court committed an abuse of discretion.  *State v. Finnerty*, 45 Ohio St.3d 104, 107, 543 N.E.2d 1233 (1989).

{¶ 42} In this case, the trial court stated that it was allowing social worker Roser to testify about his investigation pursuant to the hearsay exception in Evid.R. 803(4).  Evid.R. 803(4) allows for the admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

{¶ 43} Schentur contends that Roser's testimony regarding H.D.'s disclosures was inadmissible hearsay because Roser (1) offered his opinion as to the nature of Schentur's relationship with H.D.; (2) provided no medical diagnosis; (3) acted as an agent of the police in obtaining statements; and (4) did not refer H.D. for additional counseling or treatment.  Thus, Schentur claims, Roser's only involvement was to act as an extension of the police and any statements the social worker made at trial were only for investigative or prosecutorial purposes and, therefore, constituted inadmissible hearsay.

{¶ 44} Roser testified that he is a child sex abuse social worker with CCDCFS, an agency charged with ensuring the safety of children in Cuyahoga County. Roser stated that he received a report of an "alleged inappropriate sexual relationship between a high school basketball coach and a minor on that basketball team." Roser explained he met with the child victim and her family members. Roser explained that his investigation could result in three different conclusions — that the alleged misconduct was unsubstantiated, substantiated, or indicated — and stated that he made an "indicated" finding based on the interviews he conducted with H.D., her friends, family, and other persons. Roser testified about the results of his investigation and how he came to the conclusion of "indicated."

{¶ 45} We do not find the fact that Roser did not render a medical diagnosis or refer H.D. for further treatment to be controlling. Roser is not a medical professional; he is a child protection specialist. In addition, the fact that Roser did not refer H.D. to counseling did not alter his initial reason for meeting with H.D. because "[t]he determination regarding whether the alleged perpetrator has access to the child victim necessarily involves a treatment plan insofar as it ensures the child is free of the abuse." *See State v. Fears*, 8th Dist. Cuyahoga No. 104868, 2017-Ohio-6978, ¶ 45. Schentur and H.D. spent a considerable amount of time together, including numerous overnights where they slept in the same bed. Thus, part of Roser's plan would be to make sure that Schentur, the alleged perpetrator, no longer had access to H.D., the alleged victim.

{¶ 46} Schentur also claims that the court erred in allowing Roser to express his "opinion" about Schentur and H.D.'s "relationship." We do not agree with Schentur's characterization of Roser's testimony. Roser testified as a lay witness. Evid.R. 701 limits the testimony of lay witnesses to "those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 47} Roser testified that he had been employed at CCDCFS for 18 years and worked in the "special investigations unit" for nine years. Roser explained that he received ongoing professional training, including training in forensic interviewing. Roser testified that at the conclusion of an investigation the agency makes one of three dispositions:

> One is a substantiated finding, meaning the information I gather supports the allegations as true and also meets Ohio Revised Code definitions for out of home care child abuse and/or neglect. It could be an indicated finding, which also is supportive of the allegations as being true, meets that Ohio Revised Code criteria for out of home care abuse or neglect. But an indicated finding is more circumstantial in nature as opposed to substantiated.
>
> I can also unsubstantiate the allegations, meaning the information does not support the allegations as true and does not meet that Ohio Revised Code criteria for out of home care child abuse or neglect. Unsubstantiated doesn't necessarily mean nothing happened, but that [it] does not mean [sic] that code criteria.

{¶ 48} Social workers are permitted to testify to their disposition in an alleged sexual abuse case. *See State v. Smelcer*, 89 Ohio App.3d 115, 623 N.E.2d

1219 (8th Dist.1993). Roser testified that his conclusion of "indicated" was based

on:

> Roser: * * * the interview I conducted with H.D. and then some corroborating information throughout my interviews with friends, family, and other persons.

> State: Okay. Did it have anything to do with the nature of the relationship of the two parties?

> Roser: It did. Yes.

> State: Okay. Can you describe that more?

> Roser: Sure. Any athletic coach would be in a position of power and authority and trust when it comes to the individual that they're coaching. And I believe that that relationship was used to forge the relationship that[] subsequently occurred.

> State: Anything to do with how much time they spent together? Was that a factor?

> Roser: Yeah. Yes. I found that [Schentur] had significant access to [H.D.] during the time both supervised, unsupervised, in group settings, and alone.

> State: Did you rely on anything having to do with [Schentur's] background in terms of relatability to the victim?

> Roser: Yeah. They were in -- they shared the interest of basketball. They were close in age, which can be -- it could have been used to forge that relationship of a friendship bond prior to moving it forward into a sexual romantic relationship.

(Tr. 761-762.)

{¶ 49} We find no error in the court's admission of this testimony. Roser's

statement that an athletic coach is in a position of power and can use that position

to "forge" a "relationship," his statement that Schentur had access to H.D., and his

statement that Schentur and H.D. had common interests were rationally based on

his perception of the situation through his interviews with the alleged victim and perpetrator, the alleged victim's family, and other interested parties. Roser's responses were also helpful to a clear understanding of how he concluded that the allegations of an inappropriate sexual relationship were "indicated."

{¶ 50} Although Roser testified about his investigation into the allegations, this is not akin to a situation where a lay witness opined about whether a witness was telling the truth, *see State v. Kovac*, 150 Ohio App.3d 676, 2002-Ohio-6784, 782 N.E.2d 1185, ¶ 32 (2d Dist.) (lay witnesses are prohibited from testifying as to another witness's veracity) or opined whether the crime occurred, *see State v. Luce*, 6th Dist. Lucas No. L-16-1028, 2017-Ohio-4472, ¶ 38 (trial court erred in allowing social worker to express her opinion that appellant abused child victim). Here, Roser did not testify regarding H.D.'s veracity and he did not express an opinion whether the crime of unlawful sexual conduct with a minor occurred. Accordingly, Roser's testimony was admissible under Evid.R. 701.

{¶ 51} In light of the above, the third assignment of error is overruled.

**Fourth Assignment of Error – Prosecutorial Misconduct**

{¶ 52} In the fourth assignment of error, Schentur contends that the state committed prosecutorial misconduct so prejudicial that she was denied her right to a fair trial. Schentur argues that the state repeatedly questioned Eckert about Schentur's past convictions and displayed the LEADS report to the jury so that the jury saw inadmissible, inaccurate, and prejudicial material.

{¶ 53} The key determination in cases of prosecutorial misconduct is whether the alleged misconduct deprived the defendant of a fair trial. *State v. Fears*, 86 Ohio St.3d 329, 332, 715 N.E.2d 136 (1999); *State v. Evans*, 63 Ohio St.3d 231, 240, 586 N.E.2d 1042 (1992). "The prejudicial effect of the misconduct must be considered in the context of the entire trial, and not just the immediate context in which the misconduct occurred." *State v. Davenport*, 1st Dist. Hamilton No. C-130307, 2014-Ohio-2800, ¶ 45.

{¶ 54} In this case, the state questioned Eckert about what the LEADS report would show, and Eckert testified that it would show a person's criminal history. Defense counsel objected and the court sustained the objection:

State: And then what is in the body of this first page?

Eckert: This is a – if she's ever like in an accident or she had a ticket -

Defense Counsel: Objection.

Court: Sustained.

Eckert: - anything against her driving record.

[Court then struck the response from the record.]

* * *

State: And what would you call this page?

Eckert: Her CCH.

State: And what is a CCH.

Eckert: Criminal history.

Defense Counsel: Objection, your Honor.

Court: Sustained.

State: Well, to be fair, is there any history included in this document?

Eckert: Yes.

Court: Sustained. Stop.

(Tr. 888 – 890.)

{¶ 55} At this point, the court called the parties to sidebar and defense counsel asked the court to instruct the jury that Schentur did not have a criminal record. The court responded that the state should ask Eckert that question. The state then inquired:

State: Looking at State's Exhibit 17 [the LEADS report], is there anywhere on this document that indicates that there are any prior convictions for this particular defendant?

Eckert: Only the recent one –

Defense Counsel: Objection, your Honor.

Court: The objection is sustained. The jury will disregard.

State: I'm going to ask you to look at Exhibit 17 and to read this portion here. * * * So looking at what I was pointing at, would you change your answer and, in fact, say this is not, in fact, a conviction?[1]

Eckert: Yes.

State: Thank you. And, in fact, this — what I have shown you has no convictions for the defendant whatsoever?

Eckert: Right.

(Tr. 891-892.)

---

[1]The witness is referring to the portion of the LEADS report that showed Schentur's charges for this case.

{¶ 56} On cross-examination, defense counsel further inquired about Schentur's lack of criminal history.

{¶ 57} The LEADS report was also briefly published to the jury and it showed that Schentur had received a traffic ticket. After learning of this, defense counsel motioned for a mistrial, which the trial court denied. A redacted version of the LEADS report was entered into evidence.

{¶ 58} The Ohio Supreme Court has found that no prosecutorial misconduct existed where improper questions were properly objected to and objections were sustained, and the prosecutor did not "embark on or embrace a pattern of repeated or egregious abuse of examination or cross-examination." *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). No such pattern exists here. The state did not elicit testimony from Eckert about Schentur's criminal history. Eckert's misstatements about Schentur's "criminal convictions" were just that — misstatements the witness made that were objected to and stricken from the record. The state, at the request of defense counsel and at the direction of the trial court, had Eckert clarify that Schentur did not have a criminal record. On cross-examination, defense counsel had the witness reiterate that the defendant did not have a criminal record.

{¶ 59} Schentur also contends that the jury improperly saw that she had previously received a traffic ticket when the state published the LEADS report to the jury. It is unknown what the jury saw, if anything, when the state briefly showed it the report and a redacted version of the report was admitted into

evidence. Schentur has not shown how this action prejudicially affected her substantial rights or deprived her of a fair trial.

{¶ 60} In light of the above, the fourth assignment of error is overruled.

**Fifth Assignment of Error – Jury Instructions**

{¶ 61} In the fifth assignment of error, Schentur contends that the trial court erred in providing faulty jury instructions. Schentur argues that the court erred in including her date of birth and H.D.'s date of birth in the jury instructions.

{¶ 62} "Jury instructions are reviewed in their entirety to determine if they contain prejudicial error." *State v. Wiley*, 8th Dist. Cuyahoga No. 99576, 2014-Ohio-27, ¶ 35, citing *State v. Kimmie*, 8th Dist. Cuyahoga No. 99236, 2013-Ohio-4034, ¶ 69. Instructions to a jury "may not be judged in artificial isolation but must be viewed in the context of the overall charge." *State v. Williams*, 8th Dist. Cuyahoga No. 94616, 2011-Ohio-925, ¶ 37; *State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), paragraph four of the syllabus. Taken as a whole, we find that the trial court's instructions effectively advised the jury on the charged offenses.

{¶ 63} As mentioned, the ages of the victim and the defendant were elements of the offenses that the state was required to prove. In *State v. Norman*, 8th Dist. Cuyahoga No. 104244, 2017-Ohio-92, this court found no plain error when the jury instructions included the dates of birth of the victims where proof was required that the victims were under the age of 13 at the time of the offense. *Id.* at ¶ 101. The *Norman* court noted that the jury instructions also indicated that the jury must find the victims were under the age of 13 at the time of the offense.

*Id.* at ¶ 99. The court found that no prejudice resulted because witnesses testified to the victims' dates of birth. *Id.* at ¶ 100; *see also State v. Williams*, 8th Dist. Cuyahoga No. 94616, 2011-Ohio-925, ¶ 41 (When considering jury instructions as a whole, there was no plain error when the victim's age was included in the jury instructions because the jury instructions also clearly stated that the jury had to find that the victim was under a certain age for the charged offenses.).

{¶ 64} Schentur contends that the dates of birth were irrelevant because the state bore the burden of proving her and H.D.'s dates of birth and her date of birth was improperly admitted into evidence. We disagree. We have already determined that Schentur's date of birth was properly entered into evidence. H.D. and her father testified to H.D.'s date of birth. The trial court instructed the jury it had to find that H.D. was 13 years of age or older but less than 16 years of age and that Schentur was 18 years or older before it could find that Schentur was guilty of the charged offenses. Thus, considering the jury instructions as a whole, we find that no prejudice resulted from the inclusion of the dates of birth in the jury instructions.

{¶ 65} The fifth assignment of error is overruled.

### Sixth Assignment of Error – Verdict Forms

{¶ 66} In the sixth assignment of error, Schentur contends that the verdict forms were insufficient to convict her of felony unlawful sexual conduct with a minor. Schentur argues that pursuant to R.C. 2945.75(A)(2) and *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, the jury verdict forms were

required to have contained a reference to the level of offense or aggravating factors that determine or raise the level of the offense to make it a felony offense instead of a misdemeanor offense. Schentur raised this issue at the trial court level through a motion to correct the record; the court denied her motion.

{¶ 67} R.C. 2945.75(A) provides that "[w]hen the presence of one or more additional elements makes an offense one of more serious degree:

\* \* \*

(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶ 68} R.C. 2907.04, which prohibits unlawful sexual conduct with a minor, states:

(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

(B) Whoever violates this section is guilty of unlawful sexual conduct with a minor.

(1) Except as otherwise provided in divisions (B)(2), (3), and (4) of this section, unlawful sexual conduct with a minor is a felony of the fourth degree.

(2) Except as otherwise provided in division (B)(4) of this section, if the offender is less than four years older than the other person, unlawful sexual conduct with a minor is a misdemeanor of the first degree.

(3) Except as otherwise provided in division (B)(4) of this section, if the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree.

(4) If the offender previously has been convicted of or pleaded guilty to a violation of section 2907.02, 2907.03, or 2907.04 of the Revised Code or a violation of former section 2907.12 of the Revised Code, unlawful sexual conduct with a minor is a felony of the second degree.

{¶ 69} R.C. 2907.04(B)(2) makes unlawful sexual conduct with a minor a first-degree misdemeanor if the offender is "less than four years older" than the victim. R.C. 2907.04(B)(3) makes unlawful sexual conduct with a minor a third-degree felony if the offender is "ten or more years older" than the victim and R.C. 2907.04(B)(4) states that unlawful sexual conduct with a minor is a second-degree felony if the offender has previously been convicted of certain sexually oriented offenses. Thus, based on the plain language of the statute, unless R.C. 2907.04(B)(2), (3) or (4) apply, unlawful sexual conduct with a minor is a fourth-degree felony.

{¶ 70} The primary goal in construing a statute is to ascertain and give effect to the intent of the legislature. *State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 16, citing *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 11. Where the meaning of the statute is clear and definite, it must be applied as written. *Chappell* at *id.*, citing *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 40, 741 N.E.2d 121 (2001). However, where the words are ambiguous and are subject to varying interpretations, further interpretation is necessary. *Id.*

{¶ 71} Schentur contends that because the verdict forms were devoid of any reference to the level of offense or any aggravating factors that determine or raise the level of offense, she could only be convicted of the lowest level of the offense, a first-degree misdemeanor. We are not persuaded by her argument.

{¶ 72} In *Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, a case involving the offense of tampering with records, the Ohio Supreme Court held that "[p]ursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *Id.* at syllabus. "Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged." R.C. 2945.75(A)(2); *see also State v. Hasenyager*, 2016-Ohio-3540, 67 N.E.3d 132, ¶ 24 (9th Dist.). *Pelfrey* applies when "'the presence of one or more additional elements makes an offense one of more serious degree.'" *State v. Edwards*, 9th Dist. Lorain No. 12CA010274, 2013-Ohio-3068, ¶ 34, quoting R.C. 2945.75(A).

{¶ 73} The state makes the following argument. The provisions of R.C. 2945.75 are not triggered unless the presence of one or more additional elements makes an offense a more serious degree; courts do not consider R.C. 2945.75(A)(2) when there are no additional elements that make the crime more serious. Because the specific language of R.C. 2907.04(B)(1) states that unlawful sexual conduct with a minor is a felony of the fourth degree, R.C. 2945.75 is not triggered.

Unlawful sexual conduct with a minor is a fourth-degree felony by default; Schentur was convicted of the base charge. Thus, by its very terms, R.C. 2945.75(A) and *Pelfrey* do not apply. We find merit to the state's argument.

{¶ 74} In *State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374, the appellant argued that pursuant to R.C. 2945.75, involving the offense of failure to comply with an order or signal of a police officer, the verdict form at trial was deficient because it failed either to set out the degree of the offense or to list the aggravating circumstances that elevated the crime from a misdemeanor to a felony. The Ohio Supreme Court agreed:

> *Pelfrey* makes clear that in cases involving offenses for which the addition of an element or elements can elevate the offense to a more serious degree, the verdict form itself is the only relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed.

*McDonald* at ¶ 17.

{¶ 75} Thus, the court concluded, because the case involved "a criminal statute in which the addition of certain elements enhances the crime of failure to comply with the order or signal of a police officer," the court looks only to the verdict form signed by the jury to determine whether, pursuant to R.C. 2945.75, the appellant was properly convicted of a third-degree felony. *Id.* at ¶ 18. "To properly convict McDonald of a violation of R.C. 2921.331(B) as enhanced by R.C. 2921.331(C)(5)(a)(ii), the verdict would have to either state that McDonald was guilty of a third-degree felony or set forth the additional elements that transform

the failure to comply with the order or signal of a police officer from a misdemeanor to a third-degree felony." *Id.*

{¶ 76} Unlike *Pelfrey* and *McDonald*, here, Schentur was convicted of a crime that is a fourth-degree felony by default. Her conviction was not "enhanced" or "transformed" — there are no additional elements of R.C. 2907.04(B)(1) that are implicated by her conviction. In *McDonald*, the Ohio Supreme Court explained:

> The only path to a felony conviction for failure to comply with the order or signal of a police officer is through R.C. 2921.331(B). If only one type of failure to comply can lead to a felony, the particular elements of that type of failure to comply constitute one part of R.C. 2945.75's "one or more additional elements [that] make [ ] an offense one of more serious degree." The first element of a felony charge under R.C. 2921.331 is that the failure to comply involved willful elusion or flight from a police officer. Without that element, there can be no felony.

*Id.* at ¶ 22.

{¶ 77} In this case, unlawful sexual conduct with a minor is, by default, a felony of the fourth degree. It is only through an additional element to the offense, as stated in R.C. 2907.04(B)(2) or (3), that the offense is aggravated or enhanced.

{¶ 78} In contrast to this case, in *Pelfrey*, the offense of tampering with records was defined in one division of a statute and then an additional element was defined in a subsequent division that raised the degree of the offense where the records belonged to a government entity. In *McDonald*, the offense of failure to comply with a police officer was defined in one division of a statute and then an additional element was defined in a subsequent division that raised the degree of the offense if there was a substantial risk of serious harm. In both *Pelfrey* and

*McDonald*, the defendants were convicted of the enhanced or aggravated offense and, in both cases, the additional element did not appear in the verdict form. *See also State v. Sanders*, 8th Dist. Cuyahoga No. 107253, 2019-Ohio-1524[2] (verdict form was insufficient to support a conviction for third-degree felony domestic violence because it did not include the additional element that defendant's prior conviction for attempted abduction involved a "family or household member"; therefore, defendant could only be found guilty of fourth-degree felony domestic violence); *State v. Pierce*, 2017-Ohio-8578, 100 N.E.3d 860, ¶ 13 (8th Dist.) (verdict form was insufficient because it did not include a degree for the escape offense nor the aggravating element that elevated the offense from a fifth- to a third-degree felony). Here, the offense of unlawful sexual conduct with a minor is defined in the Revised Code as a felony of the fourth degree. That is what Schentur was found guilty of; she was not convicted of a subsequent division of the statute that raised the degree of the offense.

{¶ 79} We find *State v. Dudley*, 10th Dist. Franklin No. 06AP-1272, 2008-Ohio-390, instructive. In *Dudley*, the defendant was convicted of kidnapping in violation of R.C. 2905.01. A violation of R.C. 2905.01 is a felony of the first degree unless the offender releases the victim in a safe place unharmed, which reduces the offense to a second-degree felony. The appellant contended that he was improperly convicted of first-degree kidnapping because the verdict form did not

---

[2]*Sanders* provides a thorough discussion of R.C. 2945.75, *Pelfrey*, and cases post-*Pelfrey*.

include the degree of the offense or a statement that the jury found the additional aggravating element, making the offense one of more serious degree. The Tenth District Court of Appeals disagreed: "Unlike *Pelfrey*, the degree of the offense at issue in this case was not made more serious by the presence of an additional aggravating element. Just the opposite is true. This offense becomes less serious when the additional element is present." *Dudley* at ¶ 30. The court reasoned that the offense of kidnapping "under any and all circumstances in R.C. 2905.01(A) and (B) constitutes a felony of the first degree." *Id.* at ¶ 31. The offense becomes a second-degree felony "[o]nly if defendant releases the victim in a safe place unharmed." *Id.*, citing R.C. 2905.01(C). "Accordingly, by its very terms, R.C. 2945.75(A) and the rule of *Pelfrey* does not apply to this situation." *Dudley* at *id.*

{¶ 80} The statute is clear. R.C. 2945.75(A) applies "[w]hen the presence of one or more additional elements makes an offense one of more serious degree." In this case, Schentur's offense was not made more serious by the presence of an aggravating element; Schentur was convicted of the base offense. While it is true that unlawful sexual conduct may be elevated from a fourth-degree felony to a third-degree felony or a second-degree felony, neither of those situations are applicable to this case. R.C. 2945.75 is inapplicable because the element that the offender is at least four years older than the victim is not an additional aggravating element.

{¶ 81} Put another way, H.D. and Schentur's ages were essential elements of the case — among other elements, the state had to prove that Schentur was four

or more years older than H.D. to prove that she committed the crime of unlawful sexual conduct with a minor. Their ages were essential elements — their ages were not "additional elements" that enhanced the degree of the offense.

{¶ 82} In light of the above, we find that the verdict forms were sufficient to convict Schentur of fourth-degree felony unlawful sexual conduct with a minor. The sixth assignment of error is overruled.

{¶ 83} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

EILEEN T. GALLAGHER, A.J., CONCURS;
KATHLEEN ANN KEOUGH, J., CONCURS
IN JUDGMENT ONLY