[Cite as *State v. Smith*, 2024-Ohio-3344.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

| | | |
|---|---|---|
| State of Ohio/City of Willard | Court of Appeals No. | H-23-004 |
| | | H-23-017 |
| Appellee | | H-23-018 |
| | | H-23-019 |
| | | |
| v. | Trial Court No. | CRB2201247 |
| | | TRD2203927 |
| Ben William Smith, IV | | CRB2300064 |
| | | TRD2300184 |
| Appellant | | |

**DECISION AND JUDGMENT**

Decided:  August 30, 2024

* * * * *

Heather N. Heyman, for appellee.

Michael H. Stahl, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from the judgments by the Norwalk Municipal Court,

which sentenced defendant-appellant, Ben W. Smith IV,[1] to a total of $880 in fines, $680

---

[1] Appellant is a self-proclaimed "Moorish National for the Moroccan Ohio State Republic
of the Moroccan Empire" and refers to himself as "Ben William Bey." The Fourth
District Court of Appeals in *State v. Simon*, 2021-Ohio-3090, ¶ 29 (4th Dist.), fn. 5,
explained that the anti-government Moorish sovereign-citizen movement emerged in the

in court costs, and 330 days in jail, of which 270 days were suspended and subject to a two-year probation period with conditions, after convicting him of seven offenses of motorist-related violations. For the reasons set forth below, this court affirms the trial court's judgments.

## I. Background

{¶ 2} This appeal arises from two incidents in the city of Willard, Huron County, Ohio.

## A. The December 20, 2022 Incident

{¶ 3} The first incident occurred on December 20, 2022, at about 11:00 p.m., when the police heard and then observed appellant operate a 1990 Ford pickup truck with Ohio license plate EXE-4845 on E. Tiffin Street in the city of Willard with a flat tire. Willard police stopped the disabled vehicle and then noticed that ice obstructed nearly the entire front windshield, and a rear taillight was missing after appellant activated his hazard lights. Attempts to run the displayed license plate through LEADS yielded no registration information: the license plate EXE-4845 was not found. "LEADS stands for Law Enforcement Automated Data System. It is Ohio's law enforcement computer network with links to, among other things, vehicle and driver's license data banks."

---

early 1990's and sustains itself by selling fake license plates and other bogus documents. The court cites to The Southern Poverty Law Center, which, in turn states, "In Moorish legal filings, Moorish sovereign citizens refer to themselves with a series of Africanized names that incorporate the words 'bey' or 'el,' or a combination of the two." https://www.splcenter.org/fighting-hate/extremist-files/group/moorish-sovereign-citizens (accessed Aug. 19, 2024).

2.

*Holbrook v. Marblehead*, 2006-Ohio-1397, ¶ 2 (6th Dist.); *State v. Papusha*, 2007-Ohio-3966, ¶ 13 (12th Dist.) (LEADS reports contain only the routine activities of a public agency relative to vehicle ownership).

{¶ 4} When the uniformed officers approached the stopped pickup truck, appellant refused to respond to their requests to identify himself, such as his name, but did proclaim he was a Moorish National, outside of the police's jurisdiction, and challenged the validity of the stop. The police had reason to suspect appellant was committing a crime at the time of the stop because he was "driving on fictitious license plates." After appellant repeatedly refused to identify himself, and, in fact, never did, the police arrested appellant and had the pickup truck towed.

{¶ 5} During that process, the police observed a Pepperidge Farm employee photo badge on appellant and found a debit card on his person, each with the name "Ben Smith." With this clue as to appellant's identity, the police then searched for the pickup truck's vehicle identification number ("VIN") taken from the door due to the obstructed windshield. The LEADS report of the VIN associated the pickup truck with "Ben Smith," which confirmed appellant's identity. The LEADS report also showed that the registered license plate for the pickup truck's VIN, Ohio HOK8975, had expired. HOK8975 was not the license plate displayed on the pickup truck. The LEADS report of appellant's driving record showed that his driver's license was suspended for noncompliance – where appellant had been last convicted in 2022 for driving under a prior financial responsibility suspension for failure to pay child support.

3.

**{¶ 6}** As a result of the December 20, 2022, incident, plaintiff-appellee, city of Willard, charged appellant with: (1) driving under suspension noncompliance, a violation of R.C. 4510.16(A) and a fourth-degree misdemeanor pursuant to R.C. 4510.16(D)(2) and assigned case No. TRD22-03927A; (2) operating an unsafe vehicle, a violation of R.C. 4513.02(A) and a minor misdemeanor pursuant to R.C. 4513.02(H) and assigned case No. TRD22-03927B; (3) fictitious registration, a violation of R.C. 4549.08(A) and a fourth-degree misdemeanor pursuant to R.C. 4549.08(C) and assigned case No. TRD22-03927C; and (4) failure to disclose personal information, a violation of R.C. 2921.29(A)(1) and a fourth-degree misdemeanor pursuant to R.C. 2921.29(B) and assigned case No. CRB22-01247. Appellant was ordered to appear in court on January 5, 2023, but did not appear. The trial court issued an arrest warrant. Appellant was finally taken into custody on January 15, which is the subject of the second incident.

**{¶ 7}** On January 17, the trial court entered not guilty pleas for the uncooperative appellant who attempted to appear with his so-called "counsel."[2] However, appellant agreed to set the first incident's bench trial for the next day, January 18. Appellant appeared at trial, again with his unlicensed "counsel." Appellant and his so-called

---

[2] Appellant's "counsel" Shardaye Jeacole Malik Bey is not an attorney, but attempted to enter a self-described "special appearance" on appellant's behalf by filing a document on January 17, entitled "Counterclaim/Affidavit of Fact." In it she states, "As I am a Moorish National for the Moroccan Ohio State Republic, I do not consent to being in any jurisdiction other than the jurisdiction of my Ancestors of the Moroccan Empire. I am here as Next Friend/Consul for Ben William Bey (ex. rel. BEN W. SMITH IV, ens legis)."

4.

"counsel" repeatedly disrupted the trial proceedings by reading from their Moorish-National documents over the judge's statements and yelling at the judge.

{¶ 8} On January 18, the trial court heard testimony from one witness, the arresting police officer from the first incident. The arresting officer testified that he used the LEADS reports in performing his duties on December 20, 2022, and identified them as accurately representing the information at the time of the vehicle stop. The trial court admitted those four exhibits into evidence over appellant's objection, for which he had no valid basis.

> Court: Basis of your objection?
>
> Defendant: On the record, for the record, let the record reflect, Shardaye Jeacole Malik Bey, in proper persona, sui juris, sui heredes, Moorish National for Moroccan Ohio State Republic.

{¶ 9} Appellant continued to read aloud his self-proclaimed "rights" as a Moorish National intended to avoid prosecution for the four offenses from the first incident. For example, appellant stated, "Ben William Bey is a Moorish National for the Moroccan Ohio State Republic of the Moroccan Empire under his majesty under protection and domain, he submits to the laws of the Empire and the Empire of Morocco, and has never consented to Ben William Bey natural person being a naturalized US citizen per the 14th Amendment ex-post facto corporate policy of the United States corporation, company." In another example, appellant stated, "I am the natural person and not a creature of law subjected to administrative rules, policies, procedures, statuses, et cetera. I have no

5.

contract with your corporation. I do not wish to contract with your corporation at all. And I do not consent to be in any jurisdiction other than jurisdiction of my ancestral estate, the Moroccan Empire."

{¶ 10} In the end, appellant's sole basis for objecting to the admission of the LEADS reports into evidence was, as other appellate courts acknowledged as "'gibberish'" of his self-proclaimed status as a Moorish National such that the trial court lacked jurisdiction to prosecute him. *Simon*, 2021-Ohio-3090, at ¶ 30, quoting *State v. Tucker*, 2016-Ohio-1354, ¶ 9 (9th Dist.). "Ohio courts of appeals have routinely rejected as baseless these sorts of sovereign-citizen challenges to a trial court's jurisdiction in criminal cases." *Furr v. Ruehlman*, 2023-Ohio-481, ¶ 10. More specifically, "no 'contract' between the criminal defendant and the prosecuting jurisdiction is necessary for a trial court to obtain personal jurisdiction over the defendant." *Id.* This court has rejected the claim by a so-called Moorish National that he is not subject to the state government's jurisdiction where the judgment complies with Crim.R. 32(C). *State v. Anderson*, 2018-Ohio-3300, ¶ 3-13 (6th Dist.).

{¶ 11} Appellant did not cross-examine the witness, testify in his defense, call any witnesses, or seek to introduce any evidence.

{¶ 12} After appellant appeared to finish reading aloud his documents, the trial court rendered its verdict and imposed sentence, but appellant then continued to shout out more "gibberish" to drown out the trial judge, concluding with, "On the record, for the record, let the record reflect on January 17th, 2023 (sic.), Judge John S. Ridge abandoned

6.

ship. Therefore, I order and decree and a true case of TRD2203927 A, B, C is void. And (indiscernible) a lack of jurisdiction."

{¶ 13} Nevertheless, the trial court found appellant guilty of all four offenses and sentenced appellant as follows: in case No. TRD22-03927A, a $100 fine, $172 for court costs, and a 30-day jail term where 10 days are to be served consecutive to case No. TRD22-03927B and 20 days suspended subject to a two-year probation period with conditions. In case No. TRD22-03927B, a $100 fine, $81 for court costs, and a 30-day jail term where 10 days are to be served beginning on February 21, 2023, and 20 days suspended subject to a two-year probation period with conditions. In case No. TRD22-03927C, a $30 fine and $61 for court costs. In case No. CRB 22-01247, a $100 fine, $130 for court costs, and a 30-day jail term where 10 days are to be served concurrent to case No. TRD22-03927B and 20 days suspended subject to a two-year probation period with conditions.

## B. The January 15, 2023 Incident

{¶ 14} The second incident occurred on January 15, 2023, at about 3:00 p.m. when a uniformed police officer, a 34-year veteran patrolman, was in a marked car and he recognized appellant from the first incident. The officer saw appellant on E. Tiffin Street in the city of Willard operating a 2007 GMC sport utility vehicle. He stopped appellant because, "I had prior knowledge that he was under suspension. He had an active warrant out of Willard City." Appellant's driver's license suspension and fictitious license plate were confirmed by the witnesses' review of state of Ohio law enforcement records,

7.

including reports from LEADS and the bureau of motor vehicles ("BMV"). The LEADS report of the GMC's VIN associated that vehicle with appellant, but the displayed license plate, Ohio HIY-1451, was not for the GMC vehicle. When the officer ran the displayed license plate through LEADS, a completely different car, a 2001 Lexus 4-door sedan, and completely different owner appeared. When the officer attempted to arrest appellant for the outstanding warrant, appellant refused to obey by refusing to exit the vehicle and locking the door. The officer repeatedly warned appellant that if he refused to open the door, a window would be broken. Appellant still refused to obey. The officer broke a window without harming appellant and gained entry to the vehicle to arrest him.

{¶ 15} As a result of the January 15, 2023 incident appellee charged appellant with: (1) driving under suspension non-compliance, a violation of R.C. 4510.16(A) and a fourth-degree misdemeanor pursuant to R.C. 4510.16(D)(2) and assigned case No. TRD23-00184A; (2) fictitious registration, a violation of R.C. 4549.08(A) and a fourth-degree misdemeanor pursuant to R.C. 4549.08(C)[3] and assigned case No. TRD23-00184B; and (3) failure to comply with order or signal of a police officer, a violation of R.C. 2921.331(A) and a first-degree misdemeanor pursuant to R.C. 2921.331(C)(2) and assigned case No. CRB23-00064. Appellant was ordered to appear in court on January 19, 2023, at which time the trial court entered not guilty pleas for the uncooperative

---

[3] The record is silent that under R.C. 4549.08(C), the first violation of R.C. 4549.08(A) is a fourth-degree misdemeanor, but a third-degree misdemeanor "on each subsequent offense."

8.

appellant, who appeared pro se because his so-called "counsel" was unlicensed. The bench trial was then set for February 7.

{¶ 16} On February 7, appellant appeared at trial pro se and at the start of trial read his self-proclaimed Moorish National status into the record, which repeats the "gibberish" from the prior bench trial held on January 18.

{¶ 17} The trial court then heard testimony from two witnesses, the arresting police officer from the second incident and appellant's "counsel." The arresting officer testified that he used the LEADS reports and BMV report in performing his duties on January 15, 2023, and identified them as accurately representing the information at the time of the vehicle stop. The trial court admitted those three exhibits into evidence over appellant's objection, for which he had no valid basis.

> Court: Any objection other than what we've already heard?
>
> Defendant: I do, I'll say it again. . . . Because this Court has not produced, on the record, for the record, because this Court has not produced the certified delegation of authority issued by Congress, it's well established Constitutional Law that this Court lacks jurisdiction and must be proven.

{¶ 18} Appellant did not cross-examine the witness, but he did present his "counsel" as a witness. When she refused to submit to an oath saying, "I don't do that. I'm a Moorish National," the trial court confirmed with her that she "wish[ed] to present unsworn testimony," and the trial proceeded. Appellant's witness stated that appellant

9.

called her with his cell phone from the stopped vehicles on both December 20, 2022, and January 15, 2023, and that the police officers each time would not listen to her explanation that she and appellant are Moorish Nationals "and we have Constitutional rights that we're supposed to follow, uphold, and what we took oath to, which that was not being done at all at the stop." On January 15, appellant's witness heard over the cell phone appellant disobey police officer orders to get out of the vehicle and warnings that the window would be busted out "due to you not complying or obeying what he said he needed you to get out." Appellant's witness then coached appellant to tell the arresting police officer, "I was a Moorish National, I do not need to step out." The arresting police officer's response was, "'I don't want to hear that that jibber-jabber. It's not real.'" Appellant neither testified in his defense nor sought to introduce any other testimony or evidence.

{¶ 19} The trial court found appellant guilty of all three offenses and proceeded to sentencing. Appellant repeatedly disrupted the sentencing proceedings by ordering the trial court to produce its jurisdictional authority in accordance with his Moorish-National documents. Nevertheless, the trial court sentenced appellant as follows: in case No. TRD23-00184A, a $200 fine, $95 for court costs, and a 30-day jail term where 10 days are to be served consecutive to case No. CRB 23-00064 and 20 days suspended subject to a two-year probation period with conditions. In case No. TRD23-00184B, a $150 fine, $46 for court costs, and a 30-day jail term where 10 days are to be served concurrent to case No. TRD23-00184A and 20 days suspended subject to a two-year probation period

10.

with conditions. In case No. CRB 23-00064, a $200 fine, $95 for court costs, and a 180-day jail term where 20 days are to be served consecutive to case No. TRD22-03927B and 160 days suspended subject to a two-year probation period with conditions.

{¶ 20} Appellant timely appealed and set forth two assignments of error:

1.     The trial court erred in admitting, over objection or alternatively via plain error, uncertified and unauthenticated documents purporting to be from "LEADS" as well as the Ohio Bureau of Motor Vehicles.

2.     As the sole basis for all charges in this case derive from alleged motor vehicle licensing and registration violations that were not supported by any admissible evidence at trial, all charges are against the manifest weight of evidence and also insufficient of evidence, and Mr. Smith must be discharged pursuant to the Ohio and United States Constitutions.

## II. ADMISSIBILITY OF EVIDENCE

{¶ 21} In support of his first assignment of error, appellant argues the trial court abused its discretion when it admitted uncertified LEADS and BMV reports into evidence, over appellant's objections. Citing to *State v. Pelmear*, 2022-Ohio-1534, ¶ 42-44 (6th Dist.), appellant argues the reports are textbook examples of hearsay because the arresting officers each testified that they used those reports to identify appellant, the license plates, the vehicles, and appellant's driver record, and the information from those reports were necessary for his convictions. Appellant concludes that his convictions must

11.

be reversed because the police officers cannot "authenticate the relevant records on their own." Rather, they must be self-authenticated "when properly certified" under Evid.R. 902(4).

{¶ 22} In response, appellee argues that this court recognizes that LEADS reports and the BMV report are admissible as hearsay exceptions under Evid.R. 803(8)(a). *Id.* at ¶ 44. Appellee further argues that a police officer's testimony is sufficient to show authenticity of a LEADS printout under Evid.R. 901, citing *State v. Schentur*, 2020-Ohio-1603, ¶ 32 (8th Dist.), and *Papusha*, 2007-Ohio-3966, at ¶ 14.

{¶ 23} "The admission of evidence, as well as the regulation of the examination of witnesses, rests within the sound discretion of the trial court, and we will not reverse those rulings without a clear demonstration of an abuse of that discretion resulting in material prejudice to a party." *State v. Roberts*, 2023-Ohio-142, ¶ 69 (6th Dist.). The touchstone of materiality is a reasonable probability of a different result that undermines the outcome. *State v. Nguyen*, 2004-Ohio-2879, ¶ 52 (6th Dist.). A trial court exercises its discretion to determine the admissibility of evidence in a case so long as that discretion is exercised in line with the rules of procedure and evidence. *State v. Brunson*, 2022-Ohio-4299, ¶ 26. An abuse of discretion occurs when the trial court exercises its judgment, in an unwarranted way, regarding a matter over which it has discretionary authority. *Halbeisen v. Fantozz*, 2023-Ohio-4340, ¶ 7 (6th Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. We find no abuse of discretion when the trial court admitted the LEADS and BMV reports into evidence at appellant's two trials.

12.

{¶ 24} The arresting officer for the first incident testified at the January 18, 2023 trial that he used LEADS in the exercise of his official duties on December 20, 2022. When he came across appellant's disabled vehicle and appellant refused to identify himself, he used LEADS for information about the vehicle and then to identify appellant and his driver record. The arresting officer testified that the LEADS reports accurately represented the information at the time of the vehicle stop. At most appellant objected to appellee's motion to admit into evidence the LEADS reports but did not provide a valid basis for the objection. Appellant chose neither to object to the witness testimony nor to cross-examine the witnesses to expose any alleged vulnerabilities in his testimony. Under these circumstances, any error admitting the LEADS reports was harmless beyond a reasonable doubt under Crim.R. 52(A). *State v. Long*, 53 Ohio St.2d 91, 98 (1978).

{¶ 25} The arresting officer for the second incident testified at the February 7, 2023 trial that he used LEADS in the exercise of his official duties on January 15, 2023. When the arresting officer, who was present for the first incident, came across appellant driving the GMC vehicle, he personally knew that appellant had an active warrant and his driver license was suspended. He used LEADS and the BMV records to confirm this information. He also used LEADS for information about the vehicle, which tied it to *appellant. He then ran the displayed license plate, Ohio HIY-1451, and found nothing* matched the person and vehicle before him. The arresting officer testified that the LEADS and BMV reports accurately represented the information at the time of the vehicle stop. Appellant, again, chose neither to object to the witness testimony nor to

13.

cross-examine the witnesses to expose any alleged vulnerabilities in his testimony. As before, appellant only objected to the admission of the LEADS and BMV reports but did not articulate a valid basis for the objection.

{¶ 26} Appellant's failure to object to either police officer's testimony regarding the LEADS and BMV reports waived all but plain error. *Pelmear*, 2022-Ohio-1534, at ¶ 43. We view plain error under Crim.R. 52(B) with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Id.* The Ohio Supreme Court explains, "Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court 'may' notice plain forfeited errors; a court is not obliged to correct them." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). We find no plain error warranting a reversal of appellant's convictions.

{¶ 27} Appellant argues the LEADS and BMV reports are "textbook examples of hearsay," and we agree. *Pelmear* at ¶ 44. "Hearsay" is defined by Evid.R. 801(C) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement."

{¶ 28} However, we disagree with appellant that a properly certified copy under Evid.R. 902(4) is the exclusive method for admissibility of a LEADS or BMV report. Under Evid.R. 802, hearsay is not admissible except as otherwise provided by, among other sources, the Rules of Evidence. This court recognizes that LEADS and BMV reports are admissible under the public records exception to the hearsay rule, Evid.R. 803(8)(a). *Id.*, citing *State v. Price*, 2020-Ohio-220, ¶ 13 (6th Dist.); *State v. Cook*, 73

14.

Ohio App.3d 80, 89 (6th Dist.1991). Under Evid.R. 803(8)(a), the following are specifically excepted from the hearsay rule: "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency."

{¶ 29} "Evid.R. 901 requires that prior to admitting evidence sufficient to support a finding that the matter in question is what its proponent claims, the proponent must authenticate or identify the evidence." *Schentur*, 2020-Ohio-1603, at ¶ 31. Evid.R. 901(B)(1) and 901(B)(7) are two examples of evidence authentication or identification that conform to the requirements of the rule. *Id.* In this case, each police officer testified at each trial that they knew of LEADS and BMV reports, used them on each incident date in the performance of their official duties, and identified each report "is what it is claimed to be" pursuant to Evid.R. 901(B)(1).

{¶ 30} The officer testimonies also complied with Evid.R. 901(A), where, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Again, each officer testified that the LEADS and BMV reports were what they claimed them to be. Under Evid.R. 901(A), the authentication inquiry is not whether the document is what its author claims it to be, which is what appellant argues in this assignment of error, but whether the document is what the proponent at trial claimed it to be, which occurred at each trial. "Evid.R. 901 provides a liberal standard for the authentication of evidence." *State v. Inkton*, 2016-Ohio-693, ¶ 73 (8th Dist.). Evid.R.

15.

901(A) does not require conclusive proof of authenticity, but only sufficient foundational evidence for the fact finder to conclude that the document is what the proponent claimed it to be. *Id.*

{¶ 31} Appellant's reliance on *Pelmear's* reversal is misplaced as the key distinction from this matter was the LEADS reports were introduced into evidence separately from the police officers' testimonies. "In this case, however, the state never introduced the LEADS report.". *Pelmear* at ¶ 44. And if the LEADS report had been introduced, "an officer's testimony regarding the results of the LEADS inquiry would be harmless." *Id.* Another key distinction from this case is the limitation to Evid.R. 902(4) self-authentication of the LEADS report, which is not the issue before us. *Id.* at ¶ 44 , fn. 4., citing *Price* at ¶ 13.

{¶ 32} The trial testimony from each arresting officer and from appellant's "counsel," who, although unsworn, admitted appellant was refusing to cooperate with police orders, leaves no doubt that appellant was the perpetrator of the seven offenses of which the trial court found him guilty. *State v. Thompson*, 33 Ohio St.3d 1, 4-5 (1987). Upon review, when the trial court admitted into evidence the LEADS and BMV reports, we find no clear demonstration of an abuse of discretion that resulted in material prejudice to appellant.

{¶ 33} Appellant's first assignment of error is not well-taken.

16.

### III. Manifest Weight and Sufficiency of Evidence

**{¶ 34}** Appellant argues in support of his second assignment of error that, assuming we sustain his first assignment of error that the LEADS reports are not admissible evidence, then there is no admissible evidence that is either sufficient or of manifest weight to sustain his convictions for all seven offenses. We disagree.

**{¶ 35}** "Legal sufficiency" and "manifest weight" in criminal cases are both quantitatively and qualitatively different. *In re Z.C.*, 2023-Ohio-4703, ¶ 13, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 10, citing *State v. Thompkins,* 78 Ohio St.3d 380, (1997), paragraph two of the syllabus.

**{¶ 36}** "Legal sufficiency" is a question of law and tests the adequacy of whether the evidence is legally sufficient to sustain a verdict. *Id.* at ¶ 13, citing *Thompkins* at 386-387. We should affirm the trial court when the evidence is legally sufficient to support the verdict as a matter of law. *Id.*

**{¶ 37}** By contrast, even if the evidence is "legally sufficient" to sustain the verdict, the verdict may be against the "manifest weight" of the evidence. *Id.* at ¶ 14, citing *Eastley* at ¶ 12. "To evaluate a manifest-weight claim, we must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of all the witnesses." *State v. McKelton*, 2016-Ohio-5735, ¶ 328. We must decide if the fact finder clearly lost its way in resolving conflicts in the evidence to create a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. *Id.* A manifest-weight claim questions the effect of the evidence in inducing belief of

17.

appellant's guilt by questioning whether the fact finder could find the inclination of a greater amount of credible evidence was admitted at trial to sustain that decision than not. *Thompkins* at 387.

{¶ 38} Appellant was convicted of two R.C. 4510.16(A) violations stemming from the first and second incidents. Under R.C. 4510.16(A), "No person, whose driver's . . . license . . . has been suspended or canceled pursuant to [R.C. Ch. 4509], shall operate any motor vehicle within this state . . . during the period of the suspension or cancellation, except as specifically authorized by [R.C. Ch. 4509]." For both the first and second incidents, and while appellant's driver's license was suspended, he operated motor vehicles in this state. We find the witness testimonies and admissible LEADS reports established the elements of these offenses beyond a reasonable doubt and are legally sufficient to sustain the verdicts. We further find the foregoing evidence could induce the fact finder towards the inclination that a greater amount of credible evidence was admitted at trial to sustain those decisions than not.

{¶ 39} Appellant was convicted of violating R.C. 4513.02(A) stemming from the first incident. Under R.C. 4513.02(A), "No person shall drive or move, or cause or knowingly permit to be driven or moved, on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person." For the first incident, appellant drove a Ford pickup truck disabled with a flat tire, ice-obstructed windshield, and busted taillight. We find the witness testimony established the elements of this offense beyond a reasonable doubt and are legally sufficient to sustain the verdict.

18.

We further find the foregoing evidence could induce the fact finder towards the inclination that a greater amount of credible evidence was admitted at trial to sustain that decision than not.

{¶ 40} Appellant was convicted for two R.C. 4549.08(A) violations stemming from the first and second incidents. Under R.C. 4549.08(A), "No person shall operate or drive a motor vehicle upon the public roads and highways in this state if it displays a license plate . . . that meets any of the following criteria: (1) Is fictitious; (2) Is a counterfeit or an unlawfully made copy of any distinctive number or identification mark; (3) Belongs to another motor vehicle[.]" For the first incident, appellant drove a 1990 Ford pickup truck with expired license plates. For the second incident, appellant drove a 2007 GMC sport utility vehicle with license plates for a 2001 four-door Lexus sedan. We find the witness testimonies and admissible LEADS reports established the elements of these offenses beyond a reasonable doubt and are legally sufficient to sustain the verdicts. We further find the foregoing evidence could induce the fact finder towards the inclination that a greater amount of credible evidence was admitted at trial to sustain those decisions than not.

{¶ 41} Appellant was convicted of violating R.C. 2921.29(A)(1) stemming from the first incident. Under R.C. 2921.29(A)(1), "(A)No person who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects either of the following: (1) The person is committing, has committed, or is about to commit a criminal offense." For the first

19.

incident, after appellant operated an unsafe vehicle with expired license plates while his driver license was suspended, he refused to answer any police requests to identify himself. We find the witness testimony and admissible LEADS reports established the elements of this offense beyond a reasonable doubt and are legally sufficient to sustain the verdicts. We further find the foregoing evidence could induce the fact finder towards the inclination that a greater amount of credible evidence was admitted at trial to sustain that decision than not.

{¶ 42} Appellant was convicted of violating R.C. 2921.331(A) stemming from the second incident. Under R.C. 2921.331(A), "No person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic." For the second incident, the police officer stopped appellant because of the officer's personal knowledge of appellant's driver license suspension and an active arrest warrant. During the course of that stop, appellant refused to exit the vehicle, and police broke the window to gain entry and take appellant into custody. Appellant's witness acknowledged that appellant's car window was busted by police "due to you not complying or obeying what he said he needed you to get out." We find the witness testimonies and admissible LEADS reports established the elements of this offense beyond a reasonable doubt and are legally sufficient to sustain the verdicts. We further find the foregoing evidence could induce the fact finder towards the inclination that a greater amount of credible evidence was admitted at trial to sustain that decision than not.

{¶ 43} Appellant's second assignment of error is not well-taken.

20.

## IV. Conclusion

**{¶ 44}** On consideration whereof, the judgments of the Norwalk Municipal Court

are affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.         _____

                  JUDGE

Myron C. Duhart, J.

              _____

Charles E. Sulek, P.J.         JUDGE
CONCUR.

              _____

                  JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.